# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT DIVISION

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>      v.<br><br>WILLIAM CALOMIRIS INVESTMENT<br>    CORP., et al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. AW 05 CV2171 |

## DEFENDANTS' MOTION TO DISMISS
## OR IN THE ALTERNATIVE FOR CHANGE OF VENUE

Pursuant to Fed. R. Civ. P. 12(b)(1) and (3), Defendants William Calomiris Investment Corp., National Capitol Properties, Ltd., Peter Calomiris, George William Calomiris, Pauline Calomiris, Janice Calomiris, Joann Calomiris, and Penelope Calomiris (collectively "the Calomirises") respectfully move to dismiss Transportation Insurance Company's complaint, filed August 10, 2005.

Plaintiff Transportation Insurance Company improperly filed its complaint in this Court in a preemptive effort to beat its policyholders to their choice of forum, and thus this Court should decline jurisdiction. Venue is not proper in this Court, and the Calomirises seek dismissal for this reason as well. In the alternative, the Calomirises request a transfer of venue to the District of Columbia, where a more comprehensive lawsuit brought by the Calomirises is now pending that will address the issues raised in Transportation's complaint, as well as numerous other issues. The grounds for this

Motion are set forth in the accompanying Memorandum of Law.  A proposed order is attached hereto for the Court's consideration.

Accordingly, Defendants respectfully request that this action be dismissed, or in the alternative, transferred to the District of Columbia.

October 31, 2005                                   Respectfully submitted,

                                                   /s/  David M. Williamson
                                                   _____
                                                   Thomas B. DiBiagio (No. 04369)
                                                   e-mail:  tdibiagio@bdlaw.com
                                                   David M. Williamson (No. 16561)
                                                   e-mail: dwilliamson@bdlaw.com
                                                   BEVERIDGE & DIAMOND, P.C.
                                                   1350 Eye Street, N.W., Suite 700
                                                   Washington, D.C.  20005-3311
                                                   Tel: (202) 789-6000 Fax: (202) 789-6190

                                                   *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**GREENBELT DIVISION**

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY,              )<br>             )<br>        Plaintiff,      )<br>             )<br>      v.            )<br>             )<br>             )<br>WILLIAM CALOMIRIS INVESTMENT )<br>     CORP., et al.,     )<br>             )<br>      Defendants.   )<br>             ) | Case No. AW 05 CV2171 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR CHANGE OF VENUE**

Defendants William Calomiris Investment Corp., National Capitol Properties, Ltd., Peter Calomiris, George William Calomiris, Pauline Calomiris, Janice Calomiris, Joann Calomiris, and Penelope Calomiris (collectively referred to herein as "the Calomirises") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's declaratory judgment action for lack of jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(1) and (3), or in the alternative, for a transfer of venue pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

Plaintiff Transportation Insurance Company ("Transportation") initiated this declaratory judgment action against Defendants (collectively, "the Calomirises") alleging that it has no duty to defend or indemnify the Calomirises under two Commercial General Liability insurance policies that it sold to the Calomirises. The Calomirises filed an

insurance claim with Transportation seeking coverage relating to a personal injury lawsuit brought against the Calomirises in the Superior Court of the District of Columbia. *See White v. Calomiris*, C.A. No. 03-1833 (D.C. Super., filed Mar. 7, 2003) (Ex. A, hereto). After initially denying coverage, Transportation subsequently indicated that it would provide a defense and indemnification under the policies. Thus, the Calomirises were lulled into believing that there was no reason to seek a judicial declaration of their rights under the policies.

However, nearly sixteen months after the *White* lawsuit was commenced, Transportation filed this lawsuit – without prior notice to its insureds, and in a forum with little or no connection to the parties, the insurance contract, or the underlying lawsuit. This represents improper "procedural fencing" by Transportation to gain a tactical advantage in what it perceives as a more favorable forum.

As many courts have held in similar situations, the Calomirises are the "true plaintiffs" and entitled to the choice of forum if there is a dispute regarding coverage, and this Court should dismiss Transportation's complaint in deference to the more comprehensive action filed by the Calomirises in the United States District Court for the District of Columbia shortly after they learned of Transportation's preemptive strike. *See See William Calomiris Investment Corp. v. Transportation Ins. Co.*, C.A. No. 05-01881 (D.D.C., filed Sept. 23, 2005) (Ex. B, hereto).

Deference to the policyholders' choice of forum in the District of Columbia is especially appropriate where, as here, all of the insured property is located in the District, the underlying personal injury action is pending in the District, the underlying action alleges acts and omissions in the District, the corporate insureds and all but one of the

individual insureds reside in the District, and the insurance policies were purchased and negotiated by the Calomirises' property management company from its District of Columbia offices.  Moreover, District of Columbia substantive law will apply to any coverage issues.  In contrast, Maryland has only minimal and fortuitous connections with this dispute, and Transportation's actions were calculated to deprive the Calomirises of their opportunity to litigate this dispute in the more appropriate forum, the District of Columbia.  Thus, this Court should not condone Plaintiff's attempt at "procedural fencing," and should dismiss Plaintiff's complaint.  *Aetna Casualty & Surety Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 424 (4th Cir. 1998).

Similarly, because the "entire sequence of events underlying the claim" are connected to the District of Columbia, rather than Maryland, the action ought to be dismissed for lack of venue, or alternatively, transferred to the federal district court in the District of Columbia where it will likely be consolidated with the more comprehensive coverage action brought by the Calomirises.  *See Mitrano v. Hawes*, 377 F.3d 402, 405-06 (4th Cir. 2004); 28 U.S.C. § 1391(a); 28 U.S.C. § 1404(a).

## STATEMENT OF FACTS

1.    Defendants Peter Calomiris, George William Calomiris, Pauline Calomiris, Janice Calomiris, Joann Calomiris, and National Capitol Properties, Ltd., owned or are alleged to have owned, various residential rental properties in the District of Columbia that are at issue in the underlying personal injury lawsuit in the District of Columbia, *White v. Calomiris*, No. 03-1833 (D.C. Super.) (the "underlying action").  These properties were managed by Defendant William Calomiris Investment Corporation.  *See* Declaration of George William Calomiris ¶ 3 ("G. W. Calomiris

Decl.") (Ex. C, hereto).

2.      The Calomirises were sued in the District of Columbia Superior Court on

March 7, 2003.  *See* Complaint, *White et al. v. Calomiris et al.,* C.A. No. 03-1833 (D.C.

Super.) (Ex. A, hereto).  The plaintiffs in the underlying action allege that a minor child

was exposed to lead paint at two properties owned by the Calomirises.  Both properties

are located in the District of Columbia (one in Northeast and one in Southeast) and the

complaint in the underlying action speaks solely of alleged acts or omissions that

allegedly occurred in the District.

3.      The properties at issue in the underlying action were covered under two

blanket Commercial General Liability ("CGL") insurance policies issued by the Plaintiff,

Transportation Insurance Company.[1]  The Calomirises are primary or additional insureds

under the policies.

4.      At all times, all business relating to real properties covered by the policies,

including the procurement of the insurance policies from Transportation, was conducted

by the William Calomiris Investment Corporation (the management company for the

other Calomiris defendants) from its offices located on 16th Street in the District of

Columbia.[2]  *See* G. W. Calomiris Decl. ¶¶ 5-6 (Ex. C, hereto).  George W. Calomiris

served as the Chief Operating Officer and President of William Calomiris Investment

Corporation.  *Id.* at ¶ 1.  In this role, George W. Calomiris negotiated the insurance

---

[1] While only two of the Calomiris properties are at issue in the underlying lawsuit, each and every property covered under the policies is located in the District of Columbia, and none are located in Maryland.  *See* Geo. Wm. Calomiris Decl. ¶ 3 (Ex. C, hereto).

[2] Although Transportation's complaint alleges that the policies were "negotiated and purchased by Defendants in the State of Maryland," Transportation has failed to support these conclusory allegations with any specific facts.  *See* Compl. ¶ 3 [Dck. 1].

contract with Transportation's insurance agent, Brett Polkes, and with Transportation

through Mr. Polkes.  The policies were negotiated by phone or in person by George W.

Calomiris at the management company's District of Columbia office, *id.* at ¶ 6, and the

policies were delivered by mail to the William Calomiris Investment Corporation offices

in the District of Columbia.  *Id.* at ¶ 7.  The premiums for the policies were paid by check

written at the William Calomiris Investment Corporation's District of Columbia offices,

drawn on a District of Columbia bank and mailed from the District.  *Id.* at ¶ 8.

     5.    When the Calomirises were served in the March 2003 underlying personal

injury action, Transportation initially agreed to pay defense costs.

     6.    However, on November 14, 2003, Transportation notified the Calomirises

that it would cease providing a defense.  *See* November 14, 2003 Letter from L. Reiter

(CNA claims analyst) to P. Calomiris (Ex. D, hereto).[3]  The Calomirises thereupon wrote

to Transportation outlining the legal bases for coverage under the policies.  *See* February

11, 2004 Letter from H. Segall (counsel to the Calomirises) to L. Reiter (claims analyst

for CNA) (Ex. E, hereto).  After consulting its own outside counsel (the same attorneys

that have filed the instant action), Transportation informed the Calomirises on March 23,

2004 that it would acknowledge its duty to defend, and subsequently resumed paying

defense costs.[4]  *See* Declaration of Harold L. Segall ¶ 2 ("Segall Decl.") (Ex. F, hereto).

     7.    Over the next year, Transportation requested, and received, status reports

---

[3] Transportation apparently conducts its business through its umbrella group, CNA Companies ("CNA").  A similar letter was mailed to each defendant.

[4] However, as alleged in the Calomirises' complaint in the District of Columbia, Transportation unjustifiably and in bad faith withheld and delayed payment on substantial portions of the defense costs.  *See* Compl., *William Calomiris Inv. Corp., et al. v. Transportation Ins. Co. et al.,* C.A. No. 05-1881-RWR (D.D.C., filed Sept. 23, 2005) (Ex. B, hereto).

from the Calomirises' defense counsel regarding the progress of the underlying action. *See* Segall Decl. ¶ 3 (Ex. F, hereto).

8.      On August 31, 2004, in reference to a settlement demand by the tort plaintiffs in the underlying action, Transportation notified the Calomirises that "the most we will pay is $1,000,000." *See* August 31, 2004 Letter from L. Reiter (CNA) to H. Segall (counsel for Calomirises) (Ex. G, hereto).

9.      However, approximately one year later – and without any warning to its policyholders – Transportation's attorneys filed this declaratory judgment action on August 10, 2005 in the Greenbelt Division of the United States District Court for the District of Maryland [Dck. 1].  Transportation served the complaint directly on the Calomirises, bypassing the Calomirises' counsel in the underlying action.

10.     Transportation's complaint alleges that all the Calomiris Defendants are citizens of the District of Columbia,[5] and acknowledges that the properties and underlying action are all located in the District of Columbia.  Compl. ¶ 6 - 14 [Dck. 1]. The Complaint also shows that Transportation is incorporated and has its principal place of business in Illinois – not in Maryland.  Compl. ¶ 6.

11.     Transportation's complaint is a claim solely for declaratory relief.  *See* Compl. ¶ 1.

12.     Following Transportation's commencement of this action on September 23, 2005, the Calomirises filed a parallel, but more comprehensive, declaratory judgment action (which includes additional claims for breach of contract and bad faith) in the United States District Court for the District of Columbia.  *See* Compl., *William Calomiris*

---

[5] Although the complaint alleges that all the Defendants reside in the District of Columbia, one of the eight Defendants, Penelope Calomiris, resides in Maryland.

*Inv. Corp., et al. v. Transportation Ins. Co. et al.*, C.A. No. 05-1881-RWR (D.D.C., filed

Sept. 23, 2005) (Ex. B, hereto).  The Calomirises' District of Columbia complaint was

served on Transportation and its affiliate Continental Casualty Company,[6] on the same

day that the Calomirises accepted service of Transportation's District of Maryland

complaint.

## ARGUMENT

I.    **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED UNDER THE
      DECLARATORY JUDGMENT ACT BECAUSE PLAINTIFF
      IMPROPERLY FILED SUIT TO GAIN A PROCEDURAL ADVANTAGE
      AND THE ISSUES CAN BE MORE EFFICIENTLY RESOLVED IN THE
      CALOMIRISES' BROADER LAWSUIT IN THE DISTRICT OF
      COLUMBIA**

The Declaratory Judgment Act, 28 U.S.C. § 2201,[7] confers on federal courts

"unique and substantial discretion" in determining whether to entertain a declaratory

judgment action.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *Ind-Com*, 139

F.3d at 421 (district court's decision to entertain a claim under the declaratory judgment

act is discretionary); *Amsouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (same).  In

the Fourth Circuit, the decision whether to retain jurisdiction over a declaratory judgment

action filed by an insurer against its policyholder depends on a balance of four factors:

_____

[6] In addition to Transportation, the Calomirises' complaint also names as a
defendant Continental Casualty Company, which apparently handles payment of policy
benefits for Transportation.  *Id.*

[7] 28 U.S.C. § 2201 provides in relevant part:

In a case of actual controversy within its jurisdiction . . . any court of the
United States, upon the filing of an appropriate pleading, may declare the
rights and other legal relations of any interested party seeking such
declaration, whether or not further relief is or could be sought.  Any such
declaration shall have the force and effect of a final judgment or decree and
shall be reviewable as such.

> (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (2) whether the issues raised can be more efficiently resolved in a state court action; (3) whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts; and (4) whether the federal action is being used merely as a device for "procedural fencing."

*American Motorists Ins. Co. v. Commonwealth Medical Liability Ins. Co.*, 306 F. Supp. 2d 576, 579 (E.D. Va. 2004) (*citing Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 424 (4th Cir. 1998)).

"The Fourth Circuit has a long history of reluctance when it comes to exercising jurisdiction over declaratory judgment actions involving indemnification of parties to non-removable state court actions." *American Motorists Ins. Co.,* 306 F. Supp. 2d at 579; *see also Indemnity Ins. Co. v. Schreifer*, 142 F.2d 851, 852 (4th Cir. 1944) (affirming district court's dismissal of insurer's declaratory judgment action); *Mitcheson v. Harris*, 955 F.2d 235, 236 (4th Cir. 1992) (holding that it was an abuse of discretion for the district court to entertain an insurer's declaratory judgment action); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (affirming district court's dismissal of insurer's declaratory judgment action); *Continentall Casualty Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir. 1994) (affirming dismissal of insurer's declaratory judgment action); *Aetna Casualty and Sur. Co.*, 92 F.2d at 325 (affirming dismissal of insurer's declaratory judgment action).

Importantly, this "reluctance" and the balancing of the *American Motorists* factors apply regardless of whether there is actually any pending parallel state proceeding. *See Ind-Com. Elec. Co.*, 139 F.3d at 423. In *Ind-Com*, the Fourth Circuit recognized that the existence of a state court action is simply "one consideration relevant to whether to grant

declaratory relief." *Id.* at 423 (quoting lower court's opinion).  Regardless of the existence of a parallel state proceeding, the criteria outlined in *Quarles* – whether declaratory relief will serve a useful purpose in settling the legal relations in issue and if it will terminate and afford relief from the uncertainty giving rise to the proceeding – "as well as considerations of federalism, efficiency, comity, and procedural 'fencing', continue to be factors which the district court should balance when determining whether to assert jurisdiction over a declaratory judgment action." *Id.* (citing *Aetna Casualty & Surety Co.,* 92 F.2d at 325 ).   As discussed herein, although the Calomirises have brought their insurance complaint in the federal district court for the District of Columbia, and not in the District of Columbia Superior Court, the balancing of the foregoing factors weighs heavily in favor of dismissing Transportation's complaint, as Transportation engaged in blatant procedural fencing with this lawsuit.  Moreover, as discussed *infra*, because the Calomirises' complaint in the District of Columbia is more comprehensive, involving more issues and parties, concerns of efficiency and entanglement dictate that this case be dismissed.

A.    <u>The Calomirises Are the True Plaintiffs In This Coverage Dispute and Transportation Has Engaged In Forum Shopping By Choosing To Litigate In Maryland Rather Than the District of Columbia</u>

It is well settled that in a coverage dispute, the insured is the "true plaintiff" and "has the right to choose the forum in which its claims will be determined." *Houston General Ins. Co. v. Taylor Lumber & Treating Co.*, No. 96-1523, 1997 U.S. DIST LEXIS 1243, *5 (E.D. La. Jan. 29, 1997) (addendum).  Thus, courts do not follow the "first-to-file" rule "where, as here, the first-filed action is initiated in an apparent attempt to pre-empt anticipated litigation and deprive a party of its choice of forum." *Star Insurance Co. v. New Orleans Jazz and Heritage Foundation, Inc.*, No. 93-3947, 1994 U.S. DIST

LEXIS 5143, *8-9 (E.D. La. Apr. 19, 1994) (addendum).  Accordingly, in the Fourth

Circuit, one of the critical factors the court should consider in exercising its discretion is

whether:

> the declaratory judgment action is being used merely as a device
> for 'procedural fencing' – that is, 'to provide another forum in a
> race for *res judicata*.'

*Ind-Com,* 139 F.3d at 423 (citation omitted).  The critical question is "not which party has

chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to

get her choice of forum by filing first."  *Amsouth Bank*, 386 F.3d at 789.   That is

precisely what Transportation has done in this case.

As noted above, Transportation at first vacillated regarding its duties under the

policies but, after consulting outside counsel, concluded that it had coverage obligations

and resumed payment of defense costs for nearly a year.  In this regard, Transportation

requested and received status reports on the personal injury action, acknowledged what it

maintained were its policy limits, and indicated that the limits of what it would be

obligated to pay in settlement was "$1,000,000" – all before blindsiding the Calomirises

with this declaratory judgment action.  *See infra*, Statement of Facts ¶¶ 5-9; *see also* Ex.

G, hereto.  Like the bank in *Amsouth* (which was acting for the insurer), Transportation

here "indicated [its] willingness to consider settlement . . . through correspondence

indicating that those negotiations were ongoing." *Amsouth Bank*, 386 F.3d at 789-90.

The effect of this tactic "was to lull the [Calomirises] into believing that amicable

negotiation was still possible, and . . . the filing of th[is] declaratory action[] was an effort

to engage in *procedural fencing* to secure [Transportation's] choice of forum."  *Amsouth*,

386 F.3d at 790 (emphasis added).

Transportation's conduct in the instant case is exactly the type of conduct that numerous courts have recognized constitutes an impermissible anticipatory filing. For example, in *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983), the Fifth Circuit affirmed the district court's dismissal of a declaratory judgment action for improper forum shopping where the insurer orally rejected an insured's claim but filed a declaratory judgment action that same day. Under these facts, the court found that "there can really be no dispute that [the insurer] expected [the insured] to file suit if its claim was denied, and this suit was in anticipation of that expected action." *Id.* Indeed, the court found the conduct of the insurer in "lulling" the insured into complacency to be dispositive: "[b]ut for [the insurer's] representations and implications, Defendant would have been the first to file an action presenting the same issues (plus a few more), and the forum for trial of the issues presented in this suit would have been in [the insured's chosen forum]." *Id.* at 601 (quotation omitted).

Similarly, in *Star Ins. Co.,* 1994 U.S. DIST LEXIS 5143, *9 (addendum), the court dismissed the insurer's declaratory judgment action where the insurer filed the action during settlement negotiations, even after reserving its rights. *Id.* Here, Transportation's tactics are even more egregious. As noted, Transportation consulted its own outside counsel, after which it acknowledged its duty to defend under the policies, and resumed payments without any indication that Transportation still considered the matter in dispute. *See infra* Stmt. of Facts ¶¶ 6-8; Segall Decl. ¶ 2. Like the insurers in *Star* and *Mission*, Transportation corresponded with the Calomirises regarding settlement of the underlying action and led the Calomirises to reasonably believe that the prior

disagreement over coverage was resolved. *See* Stmt. of Facts ¶¶ 6-8. Transportation then preemptively sued the Calomirises without warning in an unrelated forum.

As numerous courts have held, under these circumstances, "when a party files a declaratory judgment action for purposes of 'procedural fencing,' a court should exercise its discretion and dismiss the case." *Star Ins. Co.*, 1994 U.S. DIST LEXIS 5143 at *10 (*quoting Casualty Indemnity Exchange v. High Croft Enterprises, Inc.*, 714 F. Supp. 1190, 1193-94 (S.D. Fla. 1989)) (addendum); *see also Continental Cas. Co.*, 35 F.3d at 968-69 (claim dismissed as remedy for procedural fencing where insurer filed a declaratory judgment action while having knowledge that the insured may have a coverage dispute); *The Netherlands Ins. Co. v. Cockman*, 342 F. Supp. 2d 396, 410 (M.D.N.C. 2004) (finding procedural fencing where insurer waited two years after the state court lawsuit was commenced to bring a declaratory judgment action); *Houston General Ins. Co.*, 1997 U.S. DIST LEXIS 1243 (insurer's decision to file in federal court was motivated by its belief that it would be a more favorable forum and was improper forum shopping) (addendum); *American Motorists Ins. Co.,* 306 F. Supp. at 581-82 (procedural fencing an element where facts indicated insurer filed merely to choose the forum in a race for *res judicata*) (addendum).[8]

---

[8] The circumstances supporting a conclusion that a preemptive lawsuit by the insurer was <u>not</u> procedural fencing are quite different from those present here. For example, in *Nautilus v. Winchester Homes, Inc.,* 15 F.3d 371, 380 (4th Cir. 1994), which established the prohibition on procedural fencing and pertinent criteria in this Circuit, the case was not dismissed because the policyholder's motion to dismiss in *Nautilus* was not filed until the "eve of trial," after the close of over seven months of discovery, and the insurance matters had not been raised in another proceeding. Here, in contrast, the motion to dismiss has been brought at the outset of the case, before the filing of an answer, and the insurance issues have been raised in another proceeding, in the District of Columbia, which is the appropriate forum. Transportation can pursue its claims in that

Here, Transportation's choice of the Maryland forum is a transparent stratagem to avoid what it perceives as unfavorable District of Columbia law by forum shopping to a more favorable venue.[9]  *See Mission Ins. Co.*, 706 F.2d at n.3; *Houston General Ins. Co.*, 1997 U.S. DIST LEXIS 1243 at *5 (insurer's decision to pursue the matter in federal court was motivated in part by its belief that it would have a more favorable forum and was improper) (addendum).  This Court should discourage such gamesmanship, and should exercise its discretion under the Declaratory Judgment Act to decline to entertain this action.

   **B.    The District of Columbia Is the Appropriate Forum Because District of Columbia Law Applies, the Calomirises' Action In the District of Columbia Is More Comprehensive Than This Action, and Dismissal Will Avoid Duplicative and Piecemeal Litigation**

Transportation's "procedural fencing" alone provides grounds for this Court to dismiss the complaint, and the Court's analysis need proceed no further.  However, the other factors articulated in *American Motorists Ins. Co.* provide additional grounds for dismissal.

   **1.    The District of Columbia Has an Interest in Having Its Courts Apply District of Columbia Law**

The District of Columbia has a strong interest in having its own courts – including its federal district court sitting in diversity – apply District of Columbia law.[10]  If  this

---

proceeding.  The contrast between the facts in this case and those in *Nautilus* highlights the propriety of dismissing this case.

   [9] For example, under District of Columbia law the duty to defend is defined solely by the four corners of the complaint in the underlying action.  *See American Continental Ins. Co. v. Pooya*, 666 A.2d 1193, 1198 (D.C. 1995).  Here, Transportation apparently will attempt to argue that "facts developed during the litigation of the Underlying Action" justify its shirking of its obligations under the policies.  *See* Compl. ¶ 25 [Dck. 1].

   [10] As noted, the Calomirises have filed their declaratory judgment action in the United States District Court for the District of Columbia, which hears state law claims

Court were to entertain this action, it would apply Maryland choice-of-law rules.  *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938); *Selective Ins. Co. of South Carolina v. Terry*, No. 04-2028, 2005 U.S. App. LEXIS 15866, *5 (4th Cir. Aug. 2, 2005) (federal courts apply the choice of law rules of the state in which they sit) (addendum).  These rules dictate that District of Columbia substantive law would apply to the insurance contract at issue, even if Transportation's lawsuit were to be entertained by this Court.  *See Progressive Northern Ins. Co. v. State Farm Ins. Co.*, No. RDB 03-2987, 2005 U.S. DIST LEXIS 15075, *3-4 (D. Md. July 20, 2005) (the federal court applies the law of the state in which the insurance contract was delivered and premiums are paid) (addendum).

In the context of an insurance contract, Maryland courts generally follow the rule of *lex loci contractus*, which requires that the interpretation of a contract be determined under the laws of the state where the final acts rendering the contract binding were performed.  *Progressive Northern*, 2005 U.S. DIST LEXIS 15075 at  *4 n.3.  "The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid."  *Id.* (citations omitted); *Roy v. Northwestern National Life Ins. Co.*, 974 F. Supp. 508, 512 (D. Md. 1997) (applying law of the state where premiums were paid and insured was given copy of policy).  Here, as noted above, Transportation's insurance policy was delivered to the William Calomiris Investment Corporation in the District of Columbia and the premiums were paid in the District of Columbia.  *See* Geo. Wm. Calomiris Decl. ¶¶ 7-8 (Ex. C, hereto).  In addition, the insurance contract itself

---

under its diversity jurisdiction.  The underlying personal injury action is pending in Superior Court for the District of Columbia.  Although the actions are in different District of Columbia courts, had the Calomirises sued Transportation in the Superior Court, Transportation likely would have removed the action to federal court, just as it chose to file in federal court in Maryland, not in the Maryland Circuit Court.

states that "this policy becomes effective and expires at 12:01 a.m. standard time *at your mailing address shown above.*" (Policy Declaration, Ex. H, hereto) (emphasis added). Because the mailing address recited in the declaration is in the District of Columbia, the policy became final in the District of Columbia and thus District of Columbia law would apply. *Id.; see Sting Security Inc. v. First Mercury Syndicate, Inc.*, 791 F. Supp. 555, 558 (D. Md. 1992) (where policy was issued to Sting at its address in Virginia, Virginia law would apply). The policy also includes a form entitled "District of Columbia Changes – Cancellation and Nonrenewal" (Ex. I, hereto), which is strong indication that the parties expected District of Columbia law to apply to the insurance contract. *See Sting Security Inc.*, 791 F. Supp. at 558 (where the policy contained certain provisions specifically relevant to Virginia insurance regulation, Virginia law would apply). Notably, there is no reference to Maryland law in the declarations.

The federal district court sitting in the District of Columbia is better suited to apply District of Columbia law to the insurance contract than a non-District of Columbia forum with no connection to either the contract or the underlying liability. As the Fourth Circuit stated in *Mitcheson v. Harris*: "There exists an interest in having the *most* authoritative voice speak on the meaning of applicable law . . . ." 955 F.2d 235, 237 (4th Cir. 1992) (emphasis added); s*ee also A.G. Edwards & Sons, Inc. v. Public Building Comm'n of St. Clair County*, 921 F.2d 118, 121 (7th Cir. 1990) (state forum has better familiarity with its own laws and is better suited to applying those laws); *Continental Casualty Co.*, 35 F.3d at 966-67 (the state whose substantive law applies has an interest in having its courts decide the issues); *American Motorists Ins. Co.*, 306 F. Supp. at 580. Indeed, federal courts recognize that a federal court sitting in a particular state is more

likely to know that state's laws, and be better equipped to apply that state's laws than a federal district court sitting out of that state. *See Indian Harbor Ins. Co. v. Factory Mutual Ins. Co.,* No. 05 Civ. 2564 (PKL), 2005 U.S. DIST. LEXIS 17253 (Aug. 17, 2005) (federal court in Pennsylvania will likely be more familiar with Pennsylvania law than a federal court sitting in New York) (addendum).   Accordingly, this Court should dismiss Transportation's action, or alternatively, transfer the case to the District of Columbia.

> **2.     The Issues Raised In This Case Can Be More Efficiently Resolved In the District of Columbia and Permitting This Action To Go Forward Would Result In Unnecessary Piecemeal Litigation**

An additional ground, sufficient in itself for dismissal of the instant action, is that the Calomirises' lawsuit in the District of Columbia forum is more comprehensive than the instant action.  Dismissing Transportation's suit will promote judicial economy and conserve judicial resources because it will avoid piecemeal litigation and duplicative proceedings in two federal jurisdictions. *See Colorado River Water Conservation Dist. v. United* States, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . though no precise rule has evolved, the general principal is to avoid duplicative litigation); *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 578 (7th Cir. 1995) (two federal actions are duplicative if they involve "the same claims, parties, and available relief").

As the Fourth Circuit has recognized, "[i]n deciding whether to entertain a declaratory judgment action, a federal court should analyze whether its resolution of the declaratory action will settle *all* aspects of the legal controversy." *Mitcheson*, 955 F.2d at 239 (emphasis added); *see also Centennial Life Ins. Co.,* 88 F.3d at 258 .  In *Centennial Life Ins.*, the court found one factor "particularly salient" in its decision to affirm the

16

district court's dismissal of an insurer's declaratory judgment action: whether "the state court action contains a defendant and a number of issues not present in the federal action." *Centennial Life Ins. Co.,* 88 F.3d at 258. As in *Centennial*, the Calomirises' lawsuit contains a defendant not present in this case, Continental Casualty Company. *See* Compl., *Calomiris v. Transportation Ins. Co.*, No. 1:05CV01881 (Ex. B, hereto). Moreover, in addition to the coverage issues raised by Transportation in this Court, the Calomirises' District of Columbia action also alleges breach of contract and that Transportation and Continental wrongfully and in bad faith withheld portions of the defense costs and expenses, and seeks exemplary damages. These issues cannot be resolved in this Court, and thus this Court should dismiss the suit or transfer the case to the District of Columbia to avoid the piecemeal litigation that will result if Transportation's complaint is not dismissed. *See Centennial Life Ins. Co.*, 88 F.3d at 258; *Mitcheson*, 955 F.2d at 239.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE VENUE IS NOT PROPER WHERE NO SUBSTANTIAL PART OF THE EVENTS GIVING RISE TO THE CLAIM OCCURRED IN MARYLAND

This Court should dismiss Transportation's complaint for lack of venue. Venue is proper under 28 U.S.C. § 1391(a) only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state; [or] (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred*, or a substantial part of the property that is the subject of the action is situated.

28 U.S.C. § 1391(a) (emphasis added). A party's contacts with the chosen state must be "sufficiently substantial to support venue." *Mitrano*, 377 F.3d at 405.

In determining whether venue is proper in Maryland, this Court should "review the entire sequence of events underlying the claim," and "should not focus only on those

matters that are in dispute or that directly led to the filing of the action."  *Mitrano*, 377

F.3d at 405.  In the context of insurance coverage disputes, this means that the events that

allegedly entitle a party to coverage – here the underlying action alleging lead based paint

poisoning on the insured properties in the District of Columbia – are considered a

"substantial part of the events or omissions giving rise to the claim."  *Id.* at 406 (*citing*

*Uffner v. La Reunion Francaise*, 244 F.3d 38, 42 (1st Cir. 2001)).  This is so even though

it is the insurance policy that is nominally at issue, and not the "how, when, or why" of

the underlying tort claim.  *Mitrano*, 377 F.3d at 406 (citing *Uffner).*

      Here, "the entire sequence of events underlying the claim" demonstrates that the

events or omissions giving rise to the claim occurred *outside* of Maryland, and therefore

venue is not proper in this Court.  As noted above, the properties at issue which were

insured under the policies are located in the District of Columbia – *not* in Maryland (and,

indeed, all of the properties insured under the policies are in the District).  Similarly, all

but one of the eight Calomiris Defendants are residents *not* of Maryland, but of the

District of Columbia.  Plaintiff Transportation is *not* incorporated in Maryland, nor is its

principal place of business in Maryland.  Finally, the underlying action that led to this

coverage dispute was brought outside of Maryland and involves alleged conduct that

occurred outside of Maryland.  Incidentally, Plaintiff's own choice of local counsel in

this action – from the District of Columbia – reinforces the conclusion that this case has

nothing to do with Maryland.

      The  Fourth Circuit has held that these types of facts – the facts of the underlying

action and parties' residence – are what determines whether the requisite substantial

connection needed for venue under 28 U.S.C. § 1391 is present.  *Mitrano*, 377 F.3d at

405-06. Here, the underlying action, the parties, and the insurance contract do not

present sufficient contact with Maryland to support venue in this Court.

In *Mitrano*, the plaintiff Mitrano, a New Hampshire attorney, entered into an oral

contract to provide legal services to the defendant, Hawes, a Massachusetts resident.

During the course of rendering legal services to Hawes, Mitrano became a resident of

Virginia and it was there that Mitrano filed a lawsuit on behalf of Hawes. Hawes

objected to venue. Ultimately, Mitrano sued his client, Hawes, for unpaid legal fees in

federal court in Virginia. The Fourth Circuit held that the underlying lawsuit which

occasioned the legal fees was the event that "created his entitlement to the payment he

now seeks," and thus it was appropriate to consider his work in Virginia when

determining if venue was proper in that State. *Id.* at 405-06 (remanding with instructions

for District Court to consider the extent of Mitrano's work in Virginia). As the

underlying lawsuit in *Mitrano* was considered seminal for determining where venue was

proper, similarly, the lawsuit that entitles the Calomirises to the coverage they now seek

occurred outside of Maryland, as did every other operative fact in this case. *See* Stmt. of

Facts ¶¶ 2-4, ¶ 9.

The allegations in Transportation's complaint about its connection to Maryland

are vague. *See* Compl. ¶¶ 3, 6. However, it appears that the only contact Transportation

has with Maryland is that the agent who assisted in procuring the insurance policy has an

office in Bethesda.[11] This lone fact is not "sufficiently substantial to support venue."

---

[11] Despite having an office in Maryland, the agent (Mr. Polkes) traveled to the
District to solicit business from the Calomirises and sent all correspondence to the
Calomirises' D.C. offices. *See* Geo. Wm. Calomiris Decl. ¶ 5 (Ex. C, hereto). In
addition, as noted above, the Calomirises' relationship with the agent was established
while Mr. Polkes had his office in the District of Columbia, not Maryland. *See id. at* ¶ 4.

*Mitrano*, 377 F.3d at 405; *Uffner*, 244 F.3d at 43. Indeed, this Court has held, in the face

of facts far more substantial than alleged by Transportation here, that Maryland was <u>not</u> a

proper venue. In *Safeco Ins. Co. of America v. Miller*, 591 F. Supp. 590, 595 (D. Md.

1984), this Court found that although a contract was formed in Maryland and expected to

be performed in Maryland, because the place of performance shifted to Kansas, most of

the witnesses were outside of Maryland, and the insurer's records were outside of

Maryland, venue was not proper in this Court. *Id.* Here *a fortiori* the contract was

formed outside Maryland, the insured risk was outside Maryland, the underlying action is

outside Maryland, and all but one of the parties reside outside Maryland. Accordingly,

venue is not appropriate in this Court. *See Safeco Ins. Co. of America*, 591 F. Supp. at

595; *Mitrano*, 377 F.3d at 405.

Where venue is not proper, this Court has discretion to dismiss the complaint or

transfer the case. *Safeco*, 591 F. Supp. at 596-97. This Court should dismiss this case in

deference to the Calomirises' more comprehensive lawsuit now pending in the District of

Columbia.

## III.    IN THE ALTERNATIVE, THE CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLUMBIA

Dismissal is the appropriate remedy here, as discussed *supra*, under the

Declaratory Judgment Act and because venue is improper. Alternatively, the case may

be transferred to the District of Columbia, where the Calomirises have brought their own,

more comprehensive claim. Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of

the parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought." 28 U.S.C §

1404(a). Transportation's complaint "might have been brought" in the District of

Columbia (and should have been, but for Transportation's tactical forum shopping). As discussed *infra*, the factors courts consider when ruling on a motion for change of venue weigh heavily in favor of transfer.

### A.    Plaintiff's Declaratory Judgment Action Could Have Been Brought In the District of Columbia

A federal court has jurisdiction over a declaratory judgment action where (1) the complaint alleges an actual controversy; (2) the court has jurisdiction (diversity or federal question), and (3) the court does not abuse its discretion in its exercise of jurisdiction. *See American Motorists Ins. Co. v. CTS Corp.*, 356 F. Supp. 2d 583, 584-85 (D.N.C. 2005). Were it not for tactical considerations (and setting aside the right of the policyholder to choose the forum), Plaintiff Transportation would naturally have sought declaratory judgment in the District of Columbia. There is complete diversity of citizenship between Transportation (an Illinois corporation) and the Calomirises (District of Columbia residents and one Maryland resident), and there is an actual controversy over coverage obligations. Unlike Transportation's manufactured claim of jurisdiction in Maryland, the District of Columbia federal court would clearly have jurisdiction to hear a coverage claim involving District of Columbia policyholders precipitated by a personal injury action brought in the District of Columbia, which allegedly occurred in the District of Columbia at properties in the District of Columbia. Accordingly, Transportation's complaint could have been brought in the District of Columbia. *Id.* Thus a transfer to that forum would be entirely appropriate. *See* Section III.B., *infra.*

### B.    The Elements Requisite To Transfer To the Federal Court In the District of Columbia Are Present Here

A district court may transfer a case to another venue under § 1404 when "the proposed transfer will better and more conveniently serve the interests of the parties and

witnesses and better protect the interests of justice." *Capital Source Fin. LLC v. B&B*

*Contractors, Inc.*, No. DKC 2004-3739, 2005 U.S. DIST LEXIS 7698, * 24 (D. Md.

Apr. 28, 2005) (addendum). In making this determination, courts have wide discretion,

but generally weigh several factors. These include:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of
> proof; (3) availability of compulsory process for attendance of unwilling
> witnesses, and the cost of obtaining attendance of willing and unwilling
> witnesses; (4) possibility of a view of the premises, if appropriate; (5)
> enforceability of a judgment, if one is obtained; (6) relative advantage and
> obstacles to a fair trial; (7) other practical problems that make a trial easy,
> expeditious, and inexpensive; (8) administrative difficulties of court
> congestion; (9) local interest in having localized controversies settled at
> home; (10) appropriateness in having a trial of a diversity case in a forum
> that is at home with the state law that must govern the action; and (11)
> avoidance of unnecessary problems with conflicts of laws.

*Capital Source Fin. LLC,* 2005 U.S. Dist. LEXIS 7698 at *25-26. Here, the

overwhelming contacts in this case are with the District of Columbia and transfer is

warranted.

First, Transportation's putative choice of forum in Maryland is not entitled to

deference in this case. It is well settled that when a party chooses a forum other than its

home forum that choice is entitled to no deference. *The Original Creatine Patent Co. v.*

*Met-Rx USA, Inc.*, No. 2:04cv759, 2005 U.S. DIST LEXIS 7894, *8-9 (E.D. Va. May 3,

2005) ("Where the plaintiff has selected a forum where neither the plaintiff nor the

defendant resides and where few or none of the events giving rise to the cause of action

accrued, 'that plaintiff's choice [of forum] loses its place status in the court's

consideration.'") (addendum); *Production Group International, Inc. v. Goldman*, 337 F.

Supp. 2d 788, 799 (E.D. Va. 2004) ("little or no weight should be accorded to a

plaintiff's choice of forum where that forum is neither the plaintiff's home forum nor a

forum with any significant connection to the dispute"); *American Motorists Ins. Co.,* 356 F. Supp. 2d at 587.  As discussed in Part I, *supra,* Transportation's choice of Maryland is a transparent stratagem to avoid what it perceives as unfavorable District of Columbia law.  Plaintiff is incorporated in Illinois and its principal place of business is located in Illinois, not Maryland.[12]  *See* Compl. ¶ 6 [Dck. 1].  Accordingly, Plaintiff's choice of forum is not entitled to deference.

Additionally, because, as noted *supra,* District of Columbia law will apply to the disputed issues in this case, *see* Section II.A.1., it is "appropriate[] [to] hav[e] a trial of a diversity case in a forum that is at home with the state law that must govern the action." *See Capital Source Fin. LLC,* 2005 U.S. DIST. LEXIS 7698 at *25-26.  As this factor demonstrates, the federal district court sitting in the District of Columbia is the more appropriate federal court to apply District of Columbia law.  *Id.* at *25-26; *Indian Harbor Ins. Co.*, 2005 U.S. DIST. LEXIS 17253 at *27-28 (federal court in Pennsylvania will likely be more familiar with Pennsylvania law than a federal court sitting in New York) (addendum).

Finally, this case has overwhelming contacts with the District of Columbia, and at most incidental connections with Maryland.  The underlying tort action giving rise to this coverage dispute was filed in the District of Columbia, all the properties at issue – indeed every property covered by the insurance contract – are located in the District of Columbia, District of Columbia law would apply to the contract, and every defendant except one is a resident of the District of Columbia.  Under these circumstances

---

[12] Apparently recognizing this deficiency, Transportation merely asserts in its complaint that it has an "underwriting office" in Maryland.  Compl. ¶ 6.  Obviously, this is not sufficient to make Maryland its home forum.

Plaintiff's complaint, if not dismissed outright, should be transferred to the federal court for the District of Columbia.  *See Indian Harbor Ins. Co.*, 2005 U.S. DIST. LEXIS 17253 at *27-28 (granting motion to transfer venue where the controversy arose in Pennsylvania, the case will determine the rights of a prominent Pennsylvania institution, most of the witnesses resided in Pennsylvania, "Pennsylvania is the locus of operative facts," and the case was an "inherently Pennsylvania based claim") (addendum).

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Plaintiff's Complaint be dismissed, or in the alternative, the case be transferred to the United States District Court for the District of Columbia.

October 31, 2005                          Respectfully submitted,

                                          /s/  David M. Williamson
                                          _____
                                          Thomas B. DiBiagio (No. 04369)
                                          e-mail:  tdibiagio@bdlaw.com
                                          David M. Williamson (No. 16561)
                                          e-mail: dwilliamson@bdlaw.com
                                          BEVERIDGE & DIAMOND, P.C.
                                          1350 Eye Street, N.W., Suite 700
                                          Washington, DC  20005-3311
                                          Tel: (202) 789-6000 Fax: (202) 789-6190

                                          *Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**GREENBELT DIVISION**

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM CALOMIRIS INVESTMENT CORP., et al., )<br>)<br>Defendants. )<br>)<br>) | Case No. AW 05 CV2171 |

**CERTIFICATE OF SERVICE**

I certify that a copy of Defendants' Motion to Dismiss or in the Alternative Change of Venue was served electronically this 31st day of October, 2005, in compliance with Fed. R. Civ. P. 5(a) and Local Rule 102(1)(c), to the following parties:

> L. Barrett Boss, Esq.
> 1667 K Street, NW Suite 500
> Washington, D.C.  20006
>
> William P. Shelley, Esq.
> Stephen R. Bishop, Esq.
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA  19103
> *Attorneys for Plaintiff*

/s/  David M. Williamson

_____
David M. Williamson